**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NUMBER 91-518** |
| **v.** | : | |
| | : | |
| **JORGE FIGUEROA** | : | |

**O R D E R**

**AND NOW**, this of 2020, upon consideration of Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and the government's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

The Court has considered the factors listed in 18 U.S.C. § 3553(a), to the extent they are applicable, and finds that the defendant has presented "extraordinary and compelling reasons" justifying a reduction of his sentence.

Thus, Mr. Figueroa's term of imprisonment is hereby reduced to the time he has already served. He shall be released from the custody of the Bureau of Prisons as soon as possible.

**IT IS SO ORDERED.**

**BY THE COURT:**

______________________________
**THE HONORABLE GERALD J. PAPPERT**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **CRIMINAL NUMBER 91-518** |
| **v.** | : | |
| | : | |
| | : | |
| **JORGE FIGUEROA** | : | |

**DEFENDANT'S MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Jorge Figueroa, by counsel undersigned, respectfully moves this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and in light of Mr. Figueroa's underlying medical conditions in combination with the threat of the COVID-19 virus, to reduce his sentence to time-served. For the reasons set forth in detail the accompanying Memorandum of Law, Mr. Figueroa meets the "extraordinary and compelling" circumstances criteria set out in the statute and the Federal Sentencing Guidelines at U.S.S.G. § 1B1.13, as he suffers from a history of cardiac disease, high blood pressure, and high cholesterol, and for which COVID-19 will exacerbate the painful complications and potentially be fatal.

Mr. Figueroa has a release plan in place and may be safely released to the community.

**WHEREFORE**, for all of the reasons set forth in the accompanying Memorandum of Law, the defense respectfully requests that the Court grant him compassionate release.

Respectfully submitted,

MARIA A. PEDRAZA
Assistant Federal Defender

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **CRIMINAL NUMBER 91-518** |
| **v.** | : | |
| | : | |
| | : | |
| **JORGE FIGUEROA** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Jorge Figueroa, by counsel undersigned, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an order reducing his sentence to time served. Mr. Figueroa is an almost 61 year old man, who is a thyroid cancer survivor suffering from obesity as evidenced by a body mass index of 31.2, and hypertension. Recently he has also developed glaucoma and a hernia for which he was treated with surgery. According to the Centers for Disease Control and Prevention (CDC), his age, together with the complications from his primary medical issues, place him in a category of elevated risk for complications from COVID-19 which can even result in his death. *See* Centers for Disease Control and Prevention, *People at Increased Risk of Severe Illness: Older Adults*, < https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html> (accessed August 14, 2020); Centers for Disease Control and Prevention, *People at Increased Risk of Severe Illness: People with Certain Medical Conditions*, <https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html>, (accessed August 14, 2020); U.S.S.G. § 1B1.13, comment. n.1(D)(2018).

Given Mr. Figueroa's documented health conditions and their classification as risk factors by the CDC, the defense anticipates that the Court's determination of this motion will turn on the issue of danger to the community. In light of the amount of time already served, the Immigration and Customs Enforcement (ICE) detainer lodged against the defendant, and his demonstrated rehabilitation while in custody, it is submitted that Mr. Figueroa does not pose a danger to the community. His health circumstances satisfy the "extraordinary and compelling reasons" standard under § 3582(c)(1)(A)(i), as well as those established by the Sentencing Commission in U.S.S.G. § 1B1.13, and therefore this motion should be granted.

Over the course of nearly thirty years in custody, Mr. Figueroa has been housed at various facilities within the Bureau of Prisons system. During that time he has completed an Associates degree and is very close to completing a Bachelors degree, in addition to completing numerous education programs offered by the Bureau of Prisons. He has maintained employment while in custody and has served as a peer instructor.

At the time of Mr. Figueroa's original sentencing in 1993, that status of the law was such that the United States Sentencing Guidelines (USSG) were considered mandatory. *See United States v. Booker*, 543 U.S. 220 (2005). The court imposed a life sentence using the applicable law at the time. A subsequent request to reduce Mr. Figueroa's sentence pursuant to the 2014 amendments to the USSG drug table was denied in large part due to Mr. Figueroa's 2005 conviction while in custody for a drug offense in the Eastern District of New York for which he is currently serving a 324 month concurrent sentence. *See United States v. Jorge Figueroa,* Criminal Number 91-518 at docket entries 76 (memorandum and order) and 77 (order). Undersigned counsel has been in contact with the office of the attorney who represented Mr.

Figueroa in that matter and has determined that a companion motion for compassionate release will be filed in the Eastern District of New York.

Since that conviction, Mr. Figueroa has used his time productively in custody and has been lauded by BOP staff members for his conduct and adjustment while in custody. *See United States v. Figueroa*, Docket Entry 72 (2018 Sentence Reduction Motion) at page 2. The character reference provided by a BOP staff member included the opinion that his adjustment while in custody establishes that he would not present a danger to the community should he be released from custody. *Id.* Since his second conviction, Mr. Figueroa has minimal conduct infractions which were punished with the short term loss of privileges and the loss of good conduct time credits. *See* Disciplinary Report (annexed hereto at Exhibit A). To this end, Mr. Figueroa has availed himself of any and every educational program possible while in custody. *See* Programs List (annexed hereto as Exhibit B). This list establishes that Mr. Figueroa has earned nearly 50 program completion certificates in addition to the college degree he earned while in custody.

Currently he is at the United States Penitentiary in Terre Haute, Indiana, but immediately prior to this location he was housed at the Metropolitan Detention Center in Brooklyn, New York. While at that facility, an electrical fire lead to a week long power loss in late January 2019 which caused a loss of electricity and heat during a particularly brutally cold winter. The conditions which were documented in numerous news articles and ultimately a class action lawsuit filed in the Eastern District of New York. *See Scott v. Quay*, Civil Docket No. 19-1075 (E.D.N.Y.) & *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons*, Civil Docket No. 19-660 (E.D.N.Y.).

When all is said and done in this particular case, the novel Coronavirus pandemic creates extraordinary and compelling circumstances which have not been considered by the Court before

and are ripe for its consideration given Mr. Figueroa's internal administrative exhaustion. Taken together with the particularized impact of his personal experience with the many decades of incarceration, as exacerbated by cancer; the separation from his family; the conditions he endured at MDC Brooklyn; and now the risk of COVID; it becomes clear that the relief requested in the instant motion is warranted.

The defense recognizes the existence of the ICE detainer lodged against Mr. Figueroa and submits that the release plan in place presumes his deportation to Colombia. Thankfully, Mr. Figueroa enjoys the continued support of his family and his wife despite the decades and many miles which have separated them. In fact, many of his family members, including his wife, intend to relocate to Colombia to live with him upon his deportation. This is a testament to the network of support which exists for him and which will serve to ensure that he never again commits an act which will separate him from them again.

For all of the reasons stated herein, and in consideration of the applicable factors set forth in 18 U.S.C. § 3553(a), it is respectfully requested that the Court reduce Mr. Figueroa's sentence to time served.

**I. Mr. Figueroa's Medical Vulnerabilities and the COVID-19 Pandemic**

On April 1, 2019, this Honorable Court sentenced Mr. Figueroa to, *inter alia*, a term of life imprisonment, under the then-mandatory sentencing guidelines, to be followed by 5 years supervised release. Mr. Figueroa's has been in custody since September 4, 1991. He is currently being housed in Terre Haute, Indiana at the United States Penitentiary. Mr. Figueroa requested compassionate release from the Bureau of Prisons and was denied. *See Letter from Warden (annexed hereto as Exhibit C).* Mr. Figueroa's only recourse is to petition this Court for release.

### A. Mr. Figueroa's medical condition

Mr. Figueroa, who is currently two months shy of turning 61 years old, has been diagnosed with high blood pressure, obesity, and is a cancer survivor. His medical records will be submitted to the court in a separate filing which is being requested to be filed under seal. As discussed above, these are all conditions which have been identified by the Centers for Disease Control as increasing vulnerability to COVID-19, as well as diminishing the chances of recovery once infected.

### B. The COVID-19 pandemic in the Bureau of Prisons

On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus which causes COVID-19 as a pandemic.[1] COVID-19 is a serious disease that makes certain populations of people severely ill and can lead to death. About 20% of COVID-19 patients require hospitalization, which is 10 times more than the percentage of patients with the flu.[2] COVID-19 is estimated to kill at least 10 people per thousand infected, making it ten times more lethal than the seasonal flu. *Id*.[3] The disease may be deadlier still, as scientists are continuing to study its symptoms and effects.

---

[1] *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 – 11 March 2020*, World Health Organization (Mar. 11, 2020), https://bit.ly/2W8dwpS.

[2] Pien Huang, How The Novel Coronavirus And The Flu Are Alike ... And Different, *www.npr.org* (Mar. 20, 2020) at https://www.npr.org/sections/goatsandsoda/2020/03/20/815408287/how-the-novel-coronavirus-and-the-flu-are-alike-and-different.

[3] *See also* Nick Wilson et al., *Case-Fatality Risk Estimates for COVID-19 Calculated by Using a Lag Time for Fatality*, 26 EID JOURNAL (prepublication June 2020), https://wwwnc.cdc.gov/eid/article/26/6/20-0320_article.

As of August 14, 2020, COVID-19 has infected over 20 million people worldwide, with upwards of 5 million cases in the United States alone, and leading to close to 761,000 deaths globally.[4] On March 26, 2020, the United States became the global leader in COVID-19 diagnoses.[5] The number of confirmed COVID-19 cases continues to rise exponentially, but reported numbers underrepresent the true scope of the crisis—"experts believe that the United States still isn't testing enough people to detect the outbreak's true spread."[6]

The severity of the coronavirus pandemic is reflected in the actions of local and national leaders, who have taken drastic measures to prevent the spread of the disease. All 50 states and the national government have declared states of emergency.[7] The number of confirmed COVID-19 cases continues to rise exponentially, but reported numbers underrepresent the true scope of the crisis, as many states and cities struggle to adequately test their populations.[8]  Schools have been

---

[4] World Health Organization (WHO), *Coronavirus (COVID-19) Dashboard* (August 14, 2020), *at https://covid19.who.int* (updating regularly).

[5] Tom Porter, *The US is Well on the Way to Having a Coronavirus Outbreak Worse than China's or Even Italy's*, BUSINESS INSIDER (Mar. 26, 2020), https://www.businessinsider.com/figures-show-us-soon-coronavirus-worse-china-2020-3.

[6] Alexis C. Madrigal & Robinson Meyer, *How the Coronavirus Became an American Catastrophe*, THE ATLANTIC (Mar. 21, 2020), https://www.theatlantic.com/health/archive/2020/03/how-many-americans-are-sick-lost-february/608521/

[7] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. Kamran Rahman & Alice Miranda Ollstein, *How States Are Responding to Coronavirus, in 7 Maps*, POLITICO (Mar. 24, 2020), https://www.politico.com/news/2020/03/24/coronavirus-state-response-maps-146144.

[8] *U.S. Coronavirus Testing Still Falls Short.  How's Your State Doing?*, NPR (May 7, 2020), https://www.npr.org/sections/health-shots/2020/05/07/851610771/u-s-coronavirus-testing-still-falls-short-hows-your-state-doing

closed, businesses shuttered, major events cancelled.  Millions remain in lockdown under shelter-in-place orders.  And while some states are revealing plans to reopen, the possibility of a second wave looms on the horizon.[9]

Conditions of imprisonment create the ideal environment for the transmission of contagious diseases.[10]  "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced."[11]  The CDC recognizes the difficulty of preventing the introduction of COVID-19 into prison facilities:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

*Id.*

---

[9] *As States Rush to Reopen, Scientists Fear a Corona Comeback*, THE NEW YORK TIMES (May 11, 2020), https://www.nytimes.com/2020/05/11/health/coronavirus-second-wave-infections.html.

[10] Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 CLINICAL INFECTIOUS DISEASES 1047, 1047 (2007), https://doi.org/10.1086/521910.

[11] Centers for Disease Control and Prevention (CDC), *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons.[12] Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.[13] Additionally, incarcerated people tend to be in poorer health than the general population. According to a recent Bureau of Justice Statistics study, approximately half of state and federal prisoners and jail inmates have chronic conditions such as cancer, high blood pressure, diabetes, cirrhosis of the liver, heart disease, and asthma.[14] Medical care of prisoners is limited at the best of times.[15] All of this is reflected in the stunning disparity between infection rates in BOP facilities as compared with the United States in general:

---

[12] Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/ 815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

[13] Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA JOURNAL (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

[14] Laura M. Maruschak et al., Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12, BUREAU OF JUSTICE STATISTICS, NCJ 248491, 1 (Rev. Oct. 4, 2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[15] *See* U.S. Dep't of Justice Office of the Inspector General, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges* (Mar. 2016), https://oig.justice.gov/reports/2016/e1602.pdf (finding that the BOP experienced chronic medical staff shortages and failed to take adequate measures to address them, leading to problems meeting the medical needs of prisoners, requiring the use of outside hospitals, and endangering the safety and security of institutions); U.S. Dep't of Justice Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (Rev. Feb. 2016), https://oig.justice.gov/reports/2015/e1505.pdf (finding that BOP facilities and services, including medical services, were inadequate to meet the needs of an aging prison population leading to delays in medical treatment for prisoners with acute and chronic heart and neurological conditions, who wait an average of 114 days to see medical specialists); David Patton, S*tatement from Federal Defenders of New York*, FEDERAL DEFENDERS OF NEW YORK (Mar. 8, 2020), https://federaldefendersny.org/about-us/news/statement-from-federal-defenders-of-new-york.html.

Number of Reported COVID-19 Cases in Bureau of Prisons[16] and the United States[17], Compared by Days since First Reported Infection

| Day of Known COVID-19 Case | BOP Date | BOP Infections | U.S. Date | U.S. Infections |
|---|---|---|---|---|
| Day 1 | 3/20/2020 | 2 | 1/22/2020 | 1 |
| Day 2 | 3/21/2020 | 3 | 1/23/2020 | 1 |
| Day 4 | 3/23/2020 | 6 | 1/25/2020 | 2 |
| Day 5 | 3/24/2020 | 9 | 1/26/2020 | 5 |
| Day 7 | 3/26/2020 | 18 | 1/28/2020 | 5 |
| Day 8 | 3/27/2020 | 27 | 1/29/2020 | 5 |
| Day 10 | 3/29/2020 | 38 | 1/31/2020 | 7 |
| Day 11 | 3/30/2020 | 52 | 2/1/2020 | 8 |
| Day 12 | 3/31/2020 | 59 | 2/2/2020 | 8 |
| Day 13 | 4/1/2020 | 94 | 2/3/2020 | 11 |
| Day 14 | 4/2/2020 | 114 | 2/4/2020 | 11 |
| Day 15 | 4/3/2020 | 141 | 2/5/2020 | 11 |
| Day 16 | 4/4/2020 | 174 | 2/6/2020 | 11 |
| Day 17 | 4/5/2020 | 197 | 2/7/2020 | 11 |
| Day 18 | 4/6/2020 | 259 | 2/8/2020 | 11 |
| Day 19 | 4/7/2020 | 313 | 2/9/2020 | 11 |
| Day 20 | 4/8/2020 | 377 | 2/10/2020 | 11 |
| Day 21 | 4/9/2020 | 408 | 2/11/2020 | 12 |
| Day 22 | 4/10/2020 | 481 | 2/12/2020 | 12 |
| Day 23 | 4/11/2020 | 520 | 2/13/2020 | 13 |
| Day 24 | 4/12/2020 | 541 | 2/14/2020 | 13 |
| Day 25 | 4/13/2020 | 589 | 2/15/2020 | 13 |
| Day 26 | 4/14/2020 | 694 | 2/16/2020 | 13 |

[16] Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).

[17] Numbers obtained from https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

| Day 27 | 4/15/2020 | 731 | 2/17/2020 | 13 |
|---|---|---|---|---|
| Day 28 | 4/16/2020 | 752 | 2/18/2020 | 13 |
| Day 29 | 4/17/2020 | 761 | 2/19/2020 | 13 |
| Day 30 | 4/18/2020 | 784 | 2/20/2020 | 13 |
| Day 31 | 4/19/2020 | 804 | 2/21/2020 | 15 |
| Day 32 | 4/20/2020 | 816 | 2/22/2020 | 15 |

Because of these dangers, the public health community is insistent on the critical need to rapidly reduce our prison populations, both for the health of our inmates and the health of the community as a whole. "We need to take the unprecedented step TODAY of providing urgent release to everyone in the jails who is at risk of serious morbidity and mortality from COVID."[18]

Similarly, on March 23, 2020, a bipartisan group of fourteen senators wrote to Attorney General Barr and the Director of the Bureau of Prisons to express "serious concern for the health

[18] Jennifer Gonnerman, *A Rikers Island Doctor Speaks Out to Save Her Elderly Patients from the Coronavirus*, THE NEW YORKER (Mar. 20, 2020) (quoting Rachael Bedard, Rikers Island Geriatrician), https://www.newyorker.com/news/news-desk/a-rikers-island-doctor-speaks-out-to-save-her-elderly-patients-from-the-coronavirus.

and wellbeing" of those inmates "most vulnerable to infection."[19] They noted that "[c]onditions of confinement do not afford individuals the opportunity to take proactive steps to protect themselves, and prisons often create the ideal environment for the transmission of contagious disease." *Id.* The senators called on the BOP to use existing tools like the elderly prisoner home confinement program and compassionate release to discharge vulnerable inmates from prison. *Id*.

As of August 14, the BOP has reported 112 inmate deaths within the federal prison system, as well as 1,296 positive cases currently among inmates and 571 positive cases among BOP staff.[20] The BOP site is currently reporting three positive cases at Terre Haute and acknowledging one inmate death related to COVID.

## II. Mr. Figueroa meets the criteria for compassionate release.

### A. Mr. Figueroa previously petitioned the BOP for release and meets the 30-day exhaustion requirement as set forth at 18 U.S.C. § 3582(c)(1)(A).

On December 21, 2018, the President signed the First Step Act (hereinafter FSA) into law. Among the criminal justice reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for a sentence reduction based upon extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the

[19] Letter from Senator Charles Grassley et al. (Mar. 23, 2020) (available at https://www.grassley.senate.gov/sites/default/files/Letter.%20to%20DOJ%20and%20BOP%20on%20COVID-19%20and%20FSA%20provisions%20-%20final%20bipartisan%20text%20with%20signature%20blocks.pdf

[20] *Covid-19 Cases*, BOP (August 14, 2020), available at https://www.bop.gov/coronavirus/ (continuously updated).

warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Mr. Figueroa filed a compassionate release request with the Warden of USP Terre Haute which was denied as evidenced by the attached documentation. Mr. Figueroa's claim is ripe for consideration by this Honorable Court.[21]

**B. This Court has the authority to reduce Mr. Figueroa's sentence under 18 U.S.C. § 3582(c)(1)(a)(i)**

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states, in relevant part, that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

---

[21] The FSA's amendment to § 3582(c)(1)(A) reflects the congressional aim to diminish the BOP's control over compassionate release by permitting defendants to file sentence reduction motions directly with the sentencing court. The BOP's administration of the compassionate release program has long been the subject of criticism. The Department of Justice's Office of the Inspector General has repeatedly found that the program results in needless and expensive incarceration and is administered ineffectively. *See* Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, at 11 (April 2013) ("The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."); Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at 51 (May 2015) ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."). Aside from the expense and inefficiency, the human costs of the BOP's stinting view of compassionate release has been documented by prisoner advocates. *See* Human Rights Watch & Families Against Mandatory Minimums, *The Answer Is No: Too Little Compassionate Release in US Federal Prisons* (Nov. 2012).

The Sentencing Commission policy statements regarding "extraordinary and compelling reasons" are found at U.S.S.G. § 1B1.13, and include the "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." *See* U.S.S.G. § 1B1.13, comment. n.1 (2018). The commentary to § 1B1.13 also provides a "catch-all provision," which states that:

> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason *other than, or in combination with*, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, comment. n.1(D)(2018) (emphasis added). Thus, "under subsection (D) of the note, the Court may also consider other 'extraordinary and compelling reasons' not specifically articulated, such as the unprecedented COVID-19 pandemic. [22] If such reasons exist and the defendant is not a danger to the safety of any other person or the community, a court may order the reduction of sentence." *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019).

---

[22]The United States Sentencing Commission has not yet amended § 1B1.13 to reflect the changes provided under the First Step Act of 2018, including the authority of a district court to consider a sentence reduction "on motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). In addition, the majority of courts which have addressed the issue have ruled that, where § 1B1.13, comment. n.1(D) is inconsistent with the FSA insofar as specifying only the Director of the Bureau of Prisons, the new legislation prevails. See e.g. *United States v. Redd*, Case No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D.Va. Mar. 16, 2020); *United States v. R.V. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *2-3 (D. Utah Feb. 18, 2020) (quoting *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505 at *5-6 (M.D.N.C. June 28, 2019). *See also, United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *3 (D. Neb. Nov. 14, 2019); *United States v. Bucci*, No. 04-10194-WGY, 2019 WL 5075964 at *1 (D. Mass. Sept. 16, 2019).

The CDC and other medical authorities have clarified that COVID-19 is especially dangerous for people with severe chronic medical conditions.[23] The CDC warns that individuals who have heart disease are at a higher risk of severe illness should they contract COVID-19.[24] Mr. Figueroa is almost 61 years old, suffers from obesity, is a cancer survivor and has hypertension.  These are conditions that Mr. Figueroa will suffer from indefinitely, and these conditions and their complications can be exacerbated by COVID-19 or even result in his death. Thus, a reduction of his sentence in warranted under U.S.S.G. § 1B1.13, comment. n.1(D).

In order to determine whether Mr. Figueroa's sentence should be reduced pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court must find that:

> (1) Extraordinary and compelling reasons warrant the reduction; (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The court also must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. *Id*.

### C.   Mr. Figueroa's Serious Medical Condition in Light of COVID-19 Constitutes an Extraordinary And Compelling Reason that Warrants A Sentence Reduction.

Under U.S.S.G. § 1B1.13, commentary note 1, extraordinary and compelling reasons for a sentence reduction exist when the defendant is suffering from serious physical or mental conditions related to his medical needs or age, or where his family circumstances warrant his

---

[23] *See* CDC, *Older Adults* (Mar. 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html.

[24] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fhcp%2Funderlying-conditions.html.

release. *See* U.S.S.G. § 1B1.13, comment. n.1(A) through (C)(2018). Subsection D of Commentary Note 1 further provides that a sentence reduction may be warranted where extraordinary and compelling reasons exist other than or in combination with the reasons identified in the preceding subdivisions of commentary note 1. *See* U.S.S.G. § 1B1.13, comment. n.1(D)(2018). Mr. Figueroa meets the criteria of § 1B1.13, comment. n.1(D) due to his age, history of cancer, hypertension and obesity.

**D. Mr. Figueroa does not pose a danger to the safety of his community.**

Section 1B1.13 mandates that the court also must determine whether the defendant is a danger to anyone or the community. U.S.S.G. § 1B1.13(2). Said determination must be made in reference to 18 U.S.C. § 3142(g), which addresses the circumstances under which release pending trial is appropriate. When evaluating the defendant's dangerousness, pursuant to § 3142(g), "[f]actors to consider include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger." [25]

Mr. Figueroa was convicted of drug offenses in this matter. As part of his sentence on this matter, he received a sentence which included a term of supervised release of 5 years. Even if this Court were to grant the instant motion, Mr. Figueroa would still remain under the supervision of the United States Probation Office pending completion of this period of supervised release. This supervision will ensure the safety of the public and community at large.[26] Above and beyond this, it is expected that Mr. Figueroa will be deported which will further eliminate any concern relating to the potential for danger to the

[25] *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663 at *3 (D. Ariz., June 27, 2019).

[26] *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504 at *3 (E.D.N.Y. July 30, 2019) (citing *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488 at *4 (S.D.Ind., May 9, 2019); *United States v. Bellamy*, No. CV151658JRTLIB, 2019 WL 3340699 at *6 (D. Minn., July 25, 2019)).

community. Thankfully, Mr. Figueroa enjoys the support of his family and intends to reside with his wife in Colombia. *See* Letters attached to *Pro Se* Motion. His desire to be by his wife's side and near his other family members will further ensure the public's safety. Currently, he is unable to see them due to COVID visiting restrictions but even before these restrictions were put into place, geographic limitations made face-to-face visits difficult.

**E. With Full Consideration of the § 3553(a) Factors, a time served sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.**

Under the present statutory regime, the existence of extraordinary and compelling circumstances confers on this Court the authority to consider the relevant factors under 18 U.S.C. § 3553(a) and determine whether the circumstances warrant a sentence reduction. These include the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence; to protect the public; and to provide needed educational or vocational training, medical care, or other treatment in the most effective manner; and the need to avoid disparities. 18 U.S.C. § 3553(a)(1), (2) & (6). In addition, the Court must consider the statutory and Guidelines sentencing ranges. § 3552(a)(3) & (4).[27]

Mr. Figueroa was convicted of drug offenses and has been in custody for almost 30 years. The sentencing goal of deterrence to two-fold: to afford the general public with adequate deterrence to criminal conduct and to protect the public from further crimes of the

[27] A few of the factors identified as relevant under U.S.S.G. § 1B1.13 overlap with the 18 U.S.C. § 3553(a) factors, such as the defendant's dangerousness, *see* § 3553(a)(2)(C) and § 1B1.13(2), and the defendant's need for medical care, *see* § 3553(a)(2)(D) and § 1B1.13, comment n. 1(A).

specific defendant. *See* 18 U.S.C. § 3553(a)(2)(B). As discussed *supra*, Mr. Figueroa's time spent in prison under these circumstances provides just punishment and adequate deterrence. *Bellamy*, 2019 WL 3340699 at *7. Incapacitation as a sentencing goal also seeks to protect the public from additional crimes that may be committed by the defendant. *See* 18 U.S.C. § 3553(a)(2)(C). As discussed above, Mr. Figueroa, despite being subject to deportation, will be on supervision for five years following his release which is adequate to protect the public from additional crimes.

Under all of the circumstances in this case, the Court should conclude that the time that Mr. Figueroa has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id*. at 492.

**F. A Reduction of Mr. Figueroa's Sentence is Consistent with U.S.S.G. § 1B1.13.**

As discussed *supra*, Mr. Figueroa is suffering from serious medical conditions which, in light of the impending COVID-19 exposure, constitutes an extraordinary and compelling reason under § 1B1.13(1). The factors enumerated under 18 U.S.C. § 3553(a) indicate that Mr. Figueroa's imprisonment, as served to date, has fulfilled the purposes of sentencing. Consequently, a reduction of Mr. Figueroa's sentence would be consistent with § 1B1.13.

## III. Conclusion

Releasing Mr, Figueroa will not only protect him from the risk of infection as COVID-19 invades BOP facilities, but release will also avoid the unavoidable impact upon the quality of the

medical care he requires by taxing an already overtaxed system.[28] Moreover, his release will have the added benefit of opening a medical bed to other inmates who will need the medical attention with COVID-19.

Indeed, Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[29] Several courts have responded to the severity of the COVID-19 outbreak within the BOP by releasing inmates pursuant to 18 U.S.C. § 3582(c)(1).[30]

In light of his serious and chronic medical condition, Mr. Figueroa will be particularly vulnerable as this infectious disease continues to spread throughout the BOP. Thus, his extreme vulnerability to this worldwide, incurable pandemic warrants his release.

---

[28]Natalie Hinton, Comment, *Curing the BOP Plague with Booker: Addressing the Inadequate Treatment in the Bureau of Prisons*, 41 J. Marshall L. Rev. 219, 231 (2007) (noting "BOP overpopulated and understaffed for years.").

[29]Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) at https://cnn.it/2W4OpV7.

[30]*See United States v. Jeremy Rodriguez*, Crim. No. 03-CR-271-AB, Dkt. No. 135 (E.D.Pa. Apr. 1, 2020)(in light of defendant's diabetes, high blood pressure and liver abnormalities in the face of "a great and unforeseen risk of severe illness and death, the court came to the "inescapable conclusion" that defendant must be released. Memo., pp. 2, 23); *United States v. Andre Williams*, Case No.: 3:04cr95/MCR, Dkt. No. 91 (N.D.Fla. Apr. 1, 2020)( Compassionate release for 78-year old armed bank robber with "severe coronary and peripheral vascular disease, congestive heart failure, left ventricular dysfunction, end-stage renal disease, hyperlipidemia, and prediabetes" who had served over 15 years of his life sentence); *United States v. Jose Maria Marin*, No. 15-cr-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) ("[F]or the reasons stated in his motion, including his advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Pedro Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection." Release Order, p. 2); *United States v. Robert M. Underwood*, Case No. 8:18-cr-201-TDC, Dkt. No. 179 (Mar. 31, 2020) (encouraging release to furlough of elderly defendant in BOP custody because, even though no positive of COVID-19 in his facility, "there is significant potential for it to enter the prison in the near future" Order, p. 5); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

For all of the foregoing reasons, it is respectfully requested that the Court grant the instant motion to reduce his sentence to time served.

Respectfully submitted,

MARIA A. PEDRAZA
Assistant Federal Defender

# Exhibit A

```
  NERBE          *            INMATE DISCIPLINE DATA           *      07-08-2020
PAGE 001 OF 001 *     CHRONOLOGICAL DISCIPLINARY RECORD       *      11:55:09

REGISTER NO: 44617-066 NAME..: FIGUEROA, JORGE
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 07-08-2020

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2722642 - SANCTIONED INCIDENT DATE/TIME: 05-24-2015 1037
DHO HEARING DATE/TIME: 03-09-2016 0800            DHO REPT DEL: 03-30-2016 1230
FACL/CHAIRPERSON.....: THP/D. EZEKIEL
REPORT REMARKS.......: I/M GUILTY OF ATTEMPTING TO CIRCUMVENT THE MAIL MONITOR-
                       ING SYSTEM USING MAGANIZES MAIL BY FAMILY MEMBERS
   296A MAIL ABUSE, DISRUPT MONITORING - FREQ: 1
        DIS GCT    / 27 DAYS / CS
        COMP:020 LAW:P
        LP EMAIL   / 45 DAYS / CS
        COMP:    LAW:
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2350595 - SANCTIONED INCIDENT DATE/TIME: 09-12-2012 1045
UDC HEARING DATE/TIME: 09-17-2012 0857
FACL/UDC/CHAIRPERSON.: MAR/UM EAST/NEUMANN
REPORT REMARKS.......: INMATE ADMITTED CHARGE.  HAD FORMS FOR OVER 2 1/2 YEARS.
                       DOES NOT MESS WITH UCC
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
        LP COMM    / 15 DAYS / CS
        COMP:    LAW:    LOSS OF COMMISSARY PRIVILEGES FOR 15 DAYS.
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 247990 - SANCTIONED  INCIDENT DATE/TIME: 08-10-1994 1700
UDC HEARING DATE/TIME: 08-12-1994 0920
FACL/UDC/CHAIRPERSON.: SPG/SURGICAL/COUNTS
REPORT REMARKS.......: INMATE ADMITTED HE COMMITTED PROHIBITED ACT
   313  LYING OR FALSIFYING STATEMENT - FREQ: 1
        CHG QTRS   / CS
        COMP:    LAW:    MOVE TO LARGE DORM ON 2-2
        LOSE PRIV  / 2 WEEKS / CS
        COMP:    LAW:    LOSE OF COMMISSARY FROM 8-12 THRU 8-26-1994

G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# Exhibit B

Department of Justice
Federal Bureau of Prisons

# INMATE SKILLS DEVELOPMENT PLAN

## Current Program Review: 06-03-2015

Name: FIGUEROA, JORGE
Register Number: 44617-066
Security/Custody: HIGH/IN
Projected Release: / LIFE

Institution: TERRE HAUTE USP, 4700 BUREAU ROAD SOUTH, TERRE HAUTE, IN 47802
Telephone: (812) 244-4400
Fax: 812-244-4791

Next Review Date: 12-01-2015
Next Custody Review Date: 04-06-2016
Age/DOB/Sex: 55 / 08-11-1959 / M
CIM Status: Y
If yes, reconciled: Y

Driver's License/State: /
FBI Number: 647808NA9
DCDC Number:
INS Number: 035747870
PDID Number:
Other IDs: DNA / MAR00944 /

Release Residence: [POC] 3128 88 TH STREET. QUEENS, NY 11373
Telephone: [Phone]

Release Employer: [Name] [Address]
Contact: [POC]
Telephone:

Primary Emergency Contact: Jenny Figueroa, Sister, 25-10 30th Rd. Apt 4n, Astoria, NY 11102
Telephone: (347) 624-7657

Secondary Emergency Contact: [POC] [Address]
Telephone:

Mentor Information:

Controlling Sentence Information:

| Offense(s)/Violator Offenses | Sentence | Sentencing Procedure | Supervision Term |
|---|---|---|---|
| | 324 MONTHS | 3559 PLRA SENTENCE | 5 YEARS |

| Controlling Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status |
|---|---|---|---|---|
| 03-07-2008 | 8 YEARS 7 MONTHS 13 DAYS / 504 / 0 | 1270 / 0 / 0 | 0 / 0 / 0 | Hearing Date: NOT ENTERED<br>Hearing Type:<br>Last USPC Action: |

Detainers

| Org | Authority | Charge #1 | Charge #2 | Charge #3 |
|---|---|---|---|---|
| INS | BICE | POSSIBLE DEPORTATION | | |

Special Parole Term: NOT ENTERED
Pending Charges: None known
Cim Status: Y
Cim Reconciled: Y

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| ASSESSMENT | $200.00 | $0.00 | 2:91CR00518-1 | FINANC RESP-COMPLETED |
| FINE COMBINED USDC | $100000.00 | $99925.00 | 2:91CR00518-1 | |

Financial Plan Active: [Y,N]
Financial Plan Date: [Date]
Comm Dep-6 mos: [$]
Commissary Balance: [$]

Payments

Commensurate: Y
Missed: Y / Per Inmate's J&C order his payments are deferred until release. Current status correct.

Department of Justice
Federal Bureau of Prisons

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRAM REVIEW: 06-03-2015

Judicial Recommendations: USP Marion / N/A / None

Special Conditions of Supervision: N/A

USPO Sentencing: Ronald DeCastro, Chief, Pennsylvania Eastern Probation Office, William J. Green, Jr. Federal Building, 600 Arch Street Suite 2400, Philadelphia, PA 19106-1679
Phone/Fax: 215-597-7950 / 215-597-8856

USPO Relocation: [POC] [District] [Street Address/Suite] [City], [State] [Zip]
Phone/Fax: [Phone] / [Fax]

Subject to 18 U.S.C. 4042(B) Notification: Y
• Conviction for a drug trafficking crime (federal)

DNA Required: Y - [Date]
Treaty Transfer Case: [Y,N]

Profile Comments:

EDUCATION DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| THP | GED HAS | COMPLETED GED OR HS DIPLOMA | 04-13-1993 | CURRENT |
| THP | ESL HAS | ENGLISH PROFICIENT | 03-12-1993 | CURRENT |

COMPLETED EDUCATION COURSES

| Course Description | Completion Date | Course Hours |
|---|---|---|
| BEGINNER ORIGAMI | 07-07-2014 | 20 |
| WATERCOLOR PAINT CLASS | 07-07-2014 | 20 |
| CMU PAINTING CLASS | 07-07-2014 | 20 |
| CARD MAKING CLASS | 07-07-2014 | 20 |
| CMU CROCHET CLASS | 03-26-2014 | 20 |
| I UNIT BEADING CLASS | 03-26-2014 | 20 |
| CMU DRAWING CLASS | 03-26-2014 | 20 |
| CMU PAINTING CLASS | 03-26-2014 | 20 |
| CMU CROCHET CLASS | 03-28-2010 | 24 |
| ACE CLASS ADVANCED MARKETING | 08-06-2009 | 20 |
| ACE CLASS INVESTMENT MARKETING | 06-15-2009 | 16 |
| INTERNET & COMPUTING CORE CERT | 03-11-2009 | 122 |
| PLYO/MEDICINE BALL SAT 0830 | 12-23-2008 | 9 |
| SWISSBALL FITNESS MON 12:20PM | 12-23-2008 | 7 |
| FITNESS PRGM AGE 50+ M/F 1230 | 12-23-2008 | 20 |
| FLEXIBILITY & STABILITY TECH. | 12-23-2008 | 10 |
| FITNESS PRGM AGE 50+ M/F 1230 | 09-28-2008 | 20 |
| ART FOR LEISURE | 09-26-2008 | 12 |
| CARDIOVAS CYCL.T/TH/S1230-1330 | 09-18-2008 | 12 |

Name: FIGUEROA, JORGE RegNo: 44617-066

| Course | Date | Hours |
|---|---|---|
| ACE OSHA SAFETY COURSE | 07-28-2008 | 10 |
| YOGA/STRESS REDUCTION PRGM | 10-09-2007 | 10 |
| YOGA/STRESS REDUCTION PRGM | 01-08-2007 | 10 |
| COMPUTER BASICS TH&F 0830-1130 | 10-13-2005 | 158 |
| NEWPORT ACCOUNTING CERTIFICATE | 09-21-2005 | 120 |
| NEWPORT CUS. SERV. CERTIFICATE | 09-21-2005 | 120 |
| CUMPUTER & FUNDAMENTAL SKILLS | 09-24-2004 | 30 |
| PRINCIPLES OF FINANCE | 05-09-2003 | 0 |
| PRINCIPLES OF BUSINESS | 01-17-2003 | 0 |
| INTRO TO CAD | 12-11-2002 | 202 |
| SMALL BUSINESS MANAGEMENT | 09-18-2002 | 0 |
| BUSINESS LAW 102 | 02-06-2002 | 30 |
| MODERN SCIENCE | 12-12-2001 | 32 |
| BUSINESS LAW | 10-02-2001 | 30 |
| ACCOUNTING 5 | 05-21-2001 | 30 |
| MODERN SCIENCE | 05-21-2001 | 20 |
| SALES MANAGEMENT | 05-04-2001 | 30 |
| PLYO/MEDICINE BALL SAT 0830 | 04-01-2001 | 75 |
| ECONOMICS 2 | 12-15-2000 | 30 |
| MANAGEMENT 2 | 12-18-2000 | 30 |
| BUSI/INFOR PROCESSING | 10-26-2000 | 88 |
| ECONOMICS 101 | 08-02-2000 | 30 |
| BUSI/INFOR PROCESSING | 06-20-2000 | 27 |
| BUSI/INFOR PROCESSING | 04-10-2000 | 44 |
| INPUT/OUTPUT 1 | 04-04-2000 | 22 |
| INTRODUCTION TO CALLIGRAPHY | 03-30-2000 | 75 |
| INTRO TO COMPUTERS | 02-16-2000 | 18 |
| ACCOUNTING 106 | 01-12-2000 | 30 |
| LEGAL RESEARCH CLASS | 09-17-1999 | 40 |
| ADV WRITING | 09-17-1999 | 20 |
| P | 09-13-1999 | 30 |
| APPR RELATED SKILLS 1330-1430 | 03-10-1999 | 355 |
| REAL ESTATE | 01-19-1999 | 30 |
| LITERATURE: SATURDAY 8-10 A.M. | 01-06-1999 | 30 |

Department of Justice Federal Bureau of Prisons

## INMATE SKILLS DEVELOPMENT PLAN PROGRAM REVIEW: 06-03-2015

| Course | Date | Hours |
|---|---|---|
| MARKETING 104 | 10-06-1998 | 30 |
| LITERATURE: SATURDAY 8-10 A.M. | 08-08-1998 | 28 |
| BUSINESS COMMUNICATION 102 | 06-03-1998 | 30 |
| ACCOUNTING 102 | 05-05-1998 | 30 |
| BUSINESS MATH 101 | 03-12-1998 | 30 |
| BUSINESS COMMUNICATION 101 | 03-12-1998 | 30 |
| LITERATURE: SATURDAY 8-10 A.M. | 10-18-1997 | 40 |
| PSYCHOLOGY OF SUCCESS | 09-05-1997 | 30 |
| ACCOUNTING 101 | 09-04-1997 | 30 |
| VT FUND 1230-230 PM | 06-26-1997 | 60 |
| SAT: 8-10 AM | 02-24-1997 | 40 |
| BLUE PRINT READING TUES & SAT | 12-16-1996 | 108 |
| BUSINESS MATH | 06-19-1996 | 33 |
| INTRO TO ECONOMICS | 06-19-1996 | 35 |
| PRINCIPLES OF SUPERVISION | 06-19-1996 | 33 |
| DEALING WITH DIVERSITY | 06-19-1996 | 35 |
| FUNDAMENTALS OF WRITING | 06-13-1996 | 45 |
| LEGAL RESEARCH CLASS | 04-08-1996 | 20 |
| ENG 108 | 12-21-1995 | 33 |
| INTRO BUS | 12-19-1995 | 35 |
| INTRO PSYCH | 12-13-1995 | 30 |
| INTRO SOC | 12-11-1995 | 25 |
| EXPOSITORY WRITING | 10-28-1995 | 42 |
| ENGLISH AS SECOND LANGUAGE | 08-10-1995 | 20 |
| INTRO TO OIL FIELD TECHNOLOGY | 02-15-1995 | 15 |
| VT-SMALL ENGINE REPAIR | 12-31-1994 | 136 |
| ADVANCED WORD PERFECT 6.0 | 12-14-1994 | 15 |
| BEGINNING WORD PERFECT 6.0 | 10-31-1994 | 15 |
| AQUA CULTURE CLASS | 01-23-1995 | 100 |
| BEGINNING DRAWING | 08-13-1994 | 20 |
| LEGAL RESEARCH CLASS | 08-13-1994 | 12 |
| CREATIVE WRITING CLASS (BROWN) | 05-28-1994 | 10 |

HIGH TEST SCORES

| Test | Subject | Score | Test Date | Test Facl | Form | State |
|---|---|---|---|---|---|---|

# Exhibit C

FIGUEROA, Jorge
44617-066
F02-216L

---

**Inmate Request to Staff Member Response**

This is in response to your Inmate Request to Staff regarding a Compassionate Release Reduction in Sentence (RIS) based on the provisions set forth in the First Step Act.

After a review of your case, we will not be pursuing a request for compassionate release on your behalf. Among other review factors, Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582(c)(1)(A) and 4205(g), indicates inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC 3582(d)(1), should be considered for a (RIS). Additionally, consideration should include assessment of medical conditions where the inmate is "experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility." A review of your last comprehensive medical summary indicates you do not have a terminal, incurable disease with a life expectancy of eighteen months or less, nor do you have a disease or condition with an end of life trajectory. Furthermore, your last comprehensive medical summary indicates your condition(s) is not to a point where you possess cognitive or physical limitations which substantially diminish your ability to function in a correctional facility. As outlined in the March 25, 2016, Operations Memorandum by Deborah G. Schult, Assistant Director, Health Services Division, "Inmates are likely to have a diminished ability to function in a correctional environment when they require assistance with instrumental activities of daily living (IADL)." Examples of IADL's in a correctional environment include, but are not limited to: medication management, personal hygiene, doing laundry, standing count, going to pill line, callout, commissary, meals, etc. There is no medical documentation to support you cannot adequately perform these functions.

Additionally, as outlined in the above mentioned Program Statement, specifically, page 12, section 7, "staff shall consider among other circumstances, the nature and circumstances of the inmates offense, criminal history, and unresolved detainers." Currently, records reflect you have a detainer lodged against you by the Immigration and Customs Enforcement Agency.

Accordingly, you are not appropriate for RIS at this time. If you are dissatisfied with this response, you may file an appeal pursuant to Program Statement 1330.18, Administrative Remedy Program, within 20 calendar days of the date of this response.

I trust this addresses your concerns.

12/9/19
Date

T. J. Watson, Complex Warden

**CERTIFICATE OF SERVICE**

I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Motion for a Reduction of Sentence, by electronic notification and/or electronic mail, upon Robert J. Livermore, Laurie Magid, and Bob Zausmer, Assistant United States Attorneys.

/s/ Maria A. Pedraza
MARIA A. PEDRAZA
Assistant Federal Defender

DATE: August 14, 2020