IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 91-00518 |
| JORGE FIGUEROA | |

PAPPERT, J.                                                                                       November 4, 2020

## MEMORANDUM

Jorge Figueroa asks the Court to grant him compassionate release. The Court denies the Motion because extraordinary reasons do not warrant Figueroa's release, and the 18 U.S.C. § 3553(a) factors counsel against releasing him.

I

In a prior opinion denying Figueroa's request for a reduced sentence under 18 U.S.C. § 3582(c)(2), the Court recounted the circumstances of his convictions leading to the life sentence and concurrent 262-month sentence from which he now seeks relief:

> In 1991, Figueroa pled guilty to a four count indictment charging him with conspiracy to import and distribute cocaine, importation of cocaine, aiding and abetting the importation of cocaine and interstate travel in aid of racketeering enterprises. *See United States v. Figueroa*, No. 91-518-1, 1996 WL 426690, at *1 (E.D. Pa. July 29, 1996). Figueroa admitted to his efforts to "establish Philadelphia as a major port of entry for cocaine of the Cali cartel of Colombia."[1] *United States v. Figueroa*, No. 91-518-01, 1992 WL 301285, at *3 (E.D. Pa. Oct. 14, 1992). After pleading guilty, Figueroa testified at the trial of two of his co-conspirators, reiterating the factual basis for his guilty plea and explaining that the initial cocaine shipment which led to his arrest was merely a "trial run"

---

[1] The Cali Cartel was, at its height, the most powerful drug trafficking organization in the world and was responsible for much of the cocaine that was brought into the United States in the 1990s. *See* Press Release, United States Department of the Treasury, Treasury Lifts Sanctions on the Defunct Colombian Business Empire led by the Rodriguez Orejuela Family (June 19, 2014) https://www.treasury.gov/press-center/press-releases/Pages/jl2436.aspx; *see* UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION, DEA-94086, THE CALI CARTEL: THE NEW KINGS OF COCAINE (1994), https://www.ncjrs.gov/pdffiles1/Digitization/152436NCJRS.pdf.

1

for larger shipments to come and that if it failed the Colombians would be "disappointed" and wouldn't use him anymore. *Id.* at *8.

At his sentencing, Figueroa attempted to withdraw his guilty plea claiming, among other things, that he was unaware of the nature and consequences of his plea, that he didn't understand what was being presented to him during the plea colloquy and that his lawyer nudged his elbow to signal how he should answer the Court's questions. *See id.* Judge Yohn denied Figueroa's Motion, stating that "the defendant's testimony is completely lacking in credibility. Indeed, rarely, if ever, has this court seen a witness who was more obviously lying than this defendant." *Id.* at *6.

Judge Yohn . . . [imposed] a life sentence, which the Third Circuit Court of Appeals affirmed. *See United States v. Figueroa*, 8 F.3d 813 (3d. Cir. 1993).[2]

Figueroa's incarceration did not, however, hinder his drug trafficking career. From 2000 to 2005, Figueroa and his co-conspirators brought large quantities of cocaine from Colombia into the United States through a port in Brooklyn, New York. *See* Transcript at 7:24–25, 20:7–11, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Oct. 9, 2007), ECF No. 600. Figueroa pled guilty in 2007 to conspiracy to import more than five kilos of cocaine, *see* Judgment, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Dec. 7, 2018), ECF No. 429; indeed, he was determined to be responsible for 150 kilograms and on March 7, 2008 was sentenced to 324 months imprisonment, to run concurrent with his life sentence for the 1991 conviction.[3] *See id*; *see* Transcript at 16:14–16, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Oct. 9, 2007), ECF No. 600.

(Memorandum Opinion Denying Sentence Reduction at 1–3, ECF No. 76.)

So far, Figueroa has served 29 years of his life sentence and about 12 and a half years of his concurrent 262-month sentence. *See* (Mot. for Release at 6); Order

---

[2] In 1996, Figueroa filed a motion pursuant to 18 U.S.C. § 3582(c)(2) for a reduction in his sentence based on amendment 505 to the United States Sentencing Guidelines. The court denied the motion, finding that the amendment did not change Figueroa's base offense level. *United States v. Figueroa*, No. 91-518-1, 1996 WL 426690, at *1 (E.D. Pa. July 29, 1996).

[3] On November 29, 2018, the district court for the Eastern District of New York reduced Figueroa's concurrent sentence from 324 months to 262 months after, as here, Figueroa moved for a reduction of his sentence pursuant to amendment 782. Order, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Dec. 7, 2018), ECF No. 608.

Reducing Sentence, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Dec. 7, 2018), ECF No. 608. Following the onset of the COVID-19 pandemic, Figueroa petitioned the warden of his prison for reduction of his sentence to time served. *See* (Mot. for Release, Exhibit C, ECF No. 84). The warden denied the request. (*Id.*)

Having exhausted his prison remedies, Figueroa now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Mot. for Release at 3.) He argues that his age, condition as a cancer survivor, obesity and high blood pressure "place him in a category of elevated risk for complications from COVID-19." (*Id.*) But, although Figueroa continues to medicate for hyperthyroidism, he has been cancer-free for approximately twenty-six years. He is 61 years old and his medical records confirm that he is mildly obese and has elevated blood pressure but reveal no other active health problems.

II

A district court may reduce an inmate's sentence as a form of compassionate release if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). As the Third Circuit has explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, "courts around the country have only granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from [COVID-19]." *United States v. Perri*, No. 2:15-CR-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (internal quotation marks and citation omitted). Before releasing an inmate, a court must also "consider[] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Relevant factors include, among others, the nature and circumstances of the offense, the history and characteristics of

3

the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from future crimes of the defendant. *See* 18 U.S.C. § 3553(a)(1–2).

A

Figueroa's medical conditions do not present an extraordinary and compelling reason for his release. As noted, his only active health problems are hyperthyroidism, obesity and high blood pressure. To be sure, the Centers for Disease Control and Prevention report that there is "consistent evidence" that obesity "put[s] individuals at increased risk for severe illness from COVID-19" and "mixed evidence" that high blood pressure does so. Coronavirus Disease 2019, *Your Health*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited November 3, 2020). Yet Figueroa's body mass index and health records indicate that he is only slightly obese and that he takes medication to regulate his blood pressure and feels only mild, if any, effects from his condition. In addition, hyperthyroidism is not a risk factor for COVID-19. *See, e.g.*, *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (hyperthyroidism presented by 64-year-old is "not the kind of condition[] that place[s] her at a uniquely high risk of grave illness or death if infected by COVID-19.") Figueroa also cites his age as a risk factor. (Mot. for Release at 3.) At 61 years old, Figueroa may be at a higher risk than a younger person of severe illness should he contract COVID-19, but he is not in the highest risk group "among those aged 85 or older." Coronavirus Disease 2019, *Your Health*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-

4

adults.html (last visited November 3, 2020).

Given Figueroa's lack of other risk factors, his age, hyperthyroidism, obesity and high blood pressure fall short of presenting an extraordinary and compelling reason for his release. *Cf. United States v. Takewell*, No. CR 3:14-00036, 2020 WL 4043060, at *2–3 (W.D. La. July 17, 2020) (reaching same conclusion for an obese inmate with hypertension); *United States v. Jones*, No. 2:18-CR-137, 2020 WL 3969912, at *4 (N.D. Ind. July 14, 2020) (same for inmate who also has Type II Diabetes); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (same for an obese inmate with hypertension); *United States v. Hayes*, No. 3:18-CR-37-J-34JBT, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (same); *United States v. Wax*, No. CR 14-251 (FLW), 2020 WL 3468219, at *2–3 (D.N.J. June 25, 2020) (same).

B

Even if extraordinary and compelling reasons existed, the § 3553(a) factors counsel against releasing Figueroa now, just as they counseled against reducing his sentence in 2019. The nature and circumstances of each of his offenses were heinous. He led a drug trafficking conspiracy that, by his own admission, sought to "establish Philadelphia as a major port of entry for cocaine of the Cali cartel of Colombia." *Figueroa*, 1992 WL 301285, at *3. Then—while serving a life sentence for that crime—he conspired again to bring large quantities of cocaine from Colombia into the United States, this time through a port in Brooklyn, New York. *See* Transcript at 7:24–25, 20:7–11, United States v. Jorge Figueroa, No. 04-515 (E.D.N.Y. Oct. 9, 2007), ECF No. 600. Both Figueroa's role in the conspiracy and the conspiracy itself weigh against release.

5

Again, like in 2019, Figueroa's history and characteristics militate against release. Although he has taken steps toward education and is reportedly a model inmate, the Court cannot look past his initial crime and subsequent conviction while incarcerated. Those realities outweigh any positive accomplishments in prison. Similarly, releasing Figueroa now, when he has served only slightly more than half of a 262-month sentence and 29 years of a life sentence imposed when he was 32 years old, would undermine the need for the sentence to deter others from engaging in large-scale narcotics trafficking (to say nothing of how release would undermine the need to deter future crimes Figueroa himself might well commit).

Figueroa also argues he poses no risk of recidivism, in part because he will be on supervised release for five years following his release. (Mot. for Release at 17.) But his conviction for participating in a large-scale narcotics conspiracy while incarcerated belies the claim that supervised release would deter him. Figueroa also notes that the Government would likely initiate deportation proceedings against him upon his release from prison. This, he argues, favors release because he would not be a danger to the community if deported. (*Id.* at 17–18.) But this argument fails because, as the Government points out, Figueroa will likely end up in prolonged deportation proceedings, which could lead to detention conditions worse than what he faces now. *See* (Gov't Resp. at 17 n.3 (citing *United States v. Prelaj*, 2020 WL 3642029, at *3 (S.D.N.Y. July 6, 2020) ("By granting Prelaj's motion for compassionate release, the Court would likely be increasing his chances of contracting COVID-19, since release from his federal sentence would likely result in Prelaj's transfer to a different, and presumably less healthy, immigration facility due to his immigration detainer."); *United*

*States v. Sandoval*, 2020 WL 3077152, at *5–6 (W.D. Wash. June 10, 2020) ("[T]here is no basis to conclude that Sandoval faces a significantly greater risk while in [BOP] custody . . . than he would upon his release while in ICE custody pending removal.")). The Court cannot conclude that Figueroa poses little or no risk of recidivism. To the contrary, his history suggests that he may reoffend and that he remains a danger to society.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
